No objections to the R&R; reviewed for clear error. Finding none,
I adopt the R&R as the decision of the Court. Plaintiff's motion for judgment on the pleadings is granted, and the case is remanded to the
Commissioner for further proceeding under sentence four of Section 405(g) of the Social Security Act.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SO ORDERED.

*Cathy Seibel*    4/8/24

CATHY SEIBEL, U.S.D.J.

------------------------------------------------------

LIONEL JAMES G.L.,

                    Plaintiff,          REPORT & RECOMMENDATION
                                        7:23-cv-03204-CS-GRJ
          v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
------------------------------------------------------

GARY R. JONES, United States Magistrate Judge:

Plaintiff Lionel James G.L.[1] received Supplemental Security Income

Benefits under the Social Security Act as a child. On April 4, 2018,

following Plaintiff's eighteenth birthday, the Commissioner of Social

Security determined that Plaintiff was not entitled to benefits under the

standard applicable to adults. Plaintiff, represented by Ny Disability, LLC,

Daniel Berger, Esq., of counsel, commenced this action seeking judicial

review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g)

and 1383 (c)(3).

This case was referred to the undersigned for a Report and

Recommendation on March 7, 2023. Presently pending is Plaintiff's Motion

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of

Civil Procedure. (Docket No. 13). For the following reasons, it is

recommended that Plaintiff's motion should be granted and that this matter

should be remanded for further proceedings.

## I. BACKGROUND

### A.    Administrative Proceedings

On April 30, 2018, the Commissioner determined that Plaintiff was

not eligible for SSI benefits as of April 4, 2018.[2] (T at 13).  This

determination was upheld upon reconsideration.  Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ").  Hearings were held

on March 8, 2019 (T at 33-41) and July 16, 2019 (T at 42-69), before ALJ

Zachary Weiss.  ALJ Weiss issued a decision on September 26, 2019,

finding that Plaintiff was not eligible for benefits. (T at 132-48).

On August 4, 2020, the Appeals Council granted Plaintiff's request for

review and remanded the matter for further proceedings. (T at 151-52).

ALJ Weiss held a hearing on January 6, 2021. (T at 70-93).  Plaintiff

appeared with counsel and testified.  (T at 82-85).  The ALJ also received

testimony from Dr. Amy Budoff, a medical expert. (T at 87-90).  ALJ Weiss

held a further hearing on July 28, 2021. (T at 94-116).  Plaintiff appeared

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 12.

with an attorney.  The ALJ received testimony from Dr. Budoff (T at 101-106) and Peter Manzi, a vocational expert. (T at 108-114).

Following the hearing, the case was reassigned to John Carlton, a different ALJ, due to ALJ Weiss's unavailability. (T at 13).

### B.    ALJ's Decision

On February 4, 2022, ALJ Carlton issued a decision finding Plaintiff ineligible for benefits. (T at 10-32).  The ALJ noted that Plaintiff, who received SSI benefits as a child, turned age 18 on November 1, 2017, and was determined to be no longer disabled within the meaning of the Social Security Act as of April 4, 2018, based upon the rules for adult disability benefits. (T at 16).

The ALJ found that, as of April 4, 2018, Plaintiff's intellectual disability, attention deficit hyperactivity disorder, hearing loss in the right ear, and asthma were severe impairments as defined under the Act. (T at 16).  The ALJ determined, however, that as of April 4, 2018, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 16).

The ALJ concluded that, as of April 4, 2018, Plaintiff retained the residual functional capacity ("RFC") to perform work a full range of work at

all exertional levels, with the following non-exertional limitations: he is limited to simple routine repetitive tasks and low stress jobs (defined as requiring only occasional decisional making, occasional changes, and occasional contact with coworkers and the general public); no exposure to extreme cold, heat, wetness, humidity, fumes, odors, dust, gases, pulmonary irritants, or poor ventilation; and no exposure to noise above the moderate level. (T at 19).

The ALJ noted that Plaintiff had no past relevant work. (T at 24). Considering Plaintiff's age (18 as of April 4, 2018), education (limited), work experience (no past relevant work), and RFC, the ALJ determined that, as of April 4, 2018, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 24).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between April 4, 2018, and February 4, 2022 (the date of the ALJ's decision). (T at 25).

On February 27, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing

a Complaint on April 18, 2023. (Docket No. 1).  Plaintiff filed a motion for

judgment on the pleadings, supported by a memorandum of law, on

September 13, 2023. (Docket Nos. 13, 14).  The Commissioner interposed

a brief opposing the motion and supporting the denial of benefits on

November 16, 2023. (Docket No. 16).  On December 7, 2023, Plaintiff

submitted a reply memorandum of law in further support of his motion.

(Docket No. 17).  The matter was referred to the undersigned for a Report

and Recommendation on March 7, 2024.

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a

claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566

F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings,

which are considered conclusive if supported by substantial evidence. *See*

42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec*., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

## B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises three primary arguments in support of his challenge to the ALJ's decision.  First, Plaintiff contends that the ALJ's step five analysis is flawed because he failed to address all of Plaintiff's limitations with the vocational expert.  Second, Plaintiff challenges the ALJ's Listings determination.  Third, Plaintiff argues that the ALJ's RFC determination does not adequately account for limitations arising from his mental impairments.  The Court will address each argument in turn.

*A.    Step Five Analysis*

At step five of the sequential analysis, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that, since April 4, 2018, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 24).  In reaching this conclusion, the ALJ relied on the testimony of Peter Manzi, a vocational expert. (T at 24-25).

Plaintiff challenges the ALJ's step five analysis, arguing that the hypothetical presented to the vocational expert did not incorporate all the limitations arising from his mental impairments.

"In questioning a vocational expert, a hypothetical must precisely and comprehensively set out every physical and mental impairment of the Plaintiff that the ALJ accepts as true and significant." *Riley v. Astrue*, No. 11-CV-6512T, 2012 U.S. Dist. LEXIS 159113, at *20 (W.D.N.Y. Nov. 6, 2012).  "If hypothetical questions do not include all of a claimant's impairments, limitations and restrictions, or are otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion that the claimant is not disabled." *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12-cv-1631 (MAD), 2014 U.S. Dist. LEXIS 13442, at *30 (N.D.N.Y. Feb. 4, 2014).

Stated succinctly – "[t]he RFC findings contained in the decision must match the hypothetical posed to the expert."  *Owens v. Astrue*, No. 5:06-

CV-0736 (NAM/GHL), 2009 U.S. Dist. LEXIS 102277, at *26-27 (N.D.N.Y. Nov. 3, 2009).

Here, the ALJ's hypothetical, in pertinent part, asked the vocational expert about a claimant who had no exertional limitations, but retained the RFC to perform simple, routine, repetitive tasks and low-stress jobs, which the ALJ defined as requiring only occasional decision-making, occasional changes in the work setting, and occasional contact with the public and co-workers. (T at 109). The ALJ also referenced the claimant having no more than an eleventh grade education and having received special education services due to learning disabilities and ADHD. (T at 110-111).

The vocational expert testified that a hypothetical claimant with these limitations could perform work that exists in significant numbers in the national economy. (T at 111). The vocational expert identified garment folder, bagger, shelving clerk, photo copying machine operator, laundry sorter, and collator operator, as representative occupations that such a hypothetical claimant could perform . (T at 111-12).

Plaintiff argues that the hypothetical presented to the vocational expert was incomplete because it did not account for his limitations with respect to maintaining concentration, persistence, and pace. In support of this argument, Plaintiff points to the ALJ's step three Listings analysis, in

which the ALJ found that Plaintiff had moderate limitation with respect to concentrating, persisting, or maintaining pace. (T at 17).

For the following reasons the Court finds no error as to this aspect of the ALJ's decision.

It is well-settled that the "determination of the step three factors of impairment are distinct from the determination of RFC at step four." *Richard B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00585-MJR, 2021 WL 4316908, at *6 (W.D.N.Y. Sept. 23, 2021)(citing *Whipple v. Astrue*, 479 Fed. Appx. 367, 369 (2d Cir. 2012) (summary order)("The regulations make clear that [the step three] factors are only to be applied in determining the severity of a mental impairment ... not a claimant's RFC, which is relevant to the guidelines' fourth and fifth steps").

"As a result, a finding at steps two or three does not automatically translate to an identical finding at step four." *Chappell v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 69640, at *18, 2020 WL 1921222 (W.D.N.Y. Apr. 21, 2020).

Moreover, an ALJ can appropriately account for moderate mental impairments, including limitations with respect to concentration, through an RFC containing non-exertional limitations like those found by the ALJ here. *See Duffy v. Comm'r of Soc. Sec.,* No. 17CV3560GHWRWL, 2018 WL

4376414, at *18 (S.D.N.Y. Aug. 24, 2018), *report and recommendation adopted,* No. 1:17-CV-3560-GHW, 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018)("Mild or moderate limitations in concentration do not necessarily establish that a claimant is disabled, particularly where the ALJ limits the scope of work to unskilled, repetitive work.")(collecting cases); *see also Campos v. Saul*, No. 18CV9809 (DF), 2020 WL 1285113, at *23 (S.D.N.Y. Mar. 18, 2020); *Stonick v. Saul*, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *13 (D. Conn. Oct. 19, 2020).

Here, the ALJ limited Plaintiff to simple, routine repetitive tasks and low stress jobs (T at 19) and incorporated those limitations into the hypothetical presented to the vocational expert. (T at 109).  Accordingly, the Court finds no error in this aspect of the ALJ's decision.

### B.    Listings Analysis

At step three of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1 of the Regulations (the "Listings"). See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). "The claimant bears the burden

of establishing that his or her impairments match a Listing or are equal in severity to a Listing." *Henry v. Astrue*, 32 F. Supp. 3d 170, 182 (N.D.N.Y. 2012) (citing *Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y.2006)).

Here, the ALJ determined that, as of April 4, 2018, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings impairments. (T at 16).

Plaintiff contends that the ALJ erred in finding that his impairments did not meet or equal Listing 12.05 (B) (Intellectual Disorder).  This Listing has three components: (1) Significantly subaverage general intellectual functioning evidenced by (a) a full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or (b) a full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; (2) significant deficits in functioning evidenced by extreme limitation in one, or marked limitation in two, of the following: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself; and (3) evidence that the current intellectual and

adaptive functioning supports the conclusion that the claimant's disorder began before he or she turned 22.

Dr. W. Amory Carr performed a consultative intelligence evaluation in April of 2019. Dr. Carr's testing showed that Plaintiff had a full-scale IQ score of 56. (T at 811).

The ALJ did not accept this IQ score as valid and found that Plaintiff did not satisfy the threshold requirement for demonstrating significantly subaverage general intellectual functioning under Listing 12.05. (T at 19). In support of this conclusion, the ALJ noted that Dr. Carr stated that the IQ score should be "interpreted with caution given that [Plaintiff][was] not on his ADHD medication" at the time of testing. (T at 19, 811). The ALJ also pointed to evidence of record, including Plaintiff's activities of daily living, which he found inconsistent with significantly subaverage intellectual functioning. (T at 19-20).

Plaintiff argues that the ALJ should have accepted the IQ score as valid, re-contacted Dr. Carr for clarification, or ordered new testing.

The Court need not resolve this issue because, even if the ALJ should have considered the IQ score obtained by Dr. Carr as valid, the ALJ's conclusion that Plaintiff did not satisfy the paragraph (B)

requirements of Listing 12.05 is supported by substantial evidence, which is sufficient to sustain the Listings decision.

The ALJ found that Plaintiff had moderate limitation with respect to understanding, remembering, or applying information. (T at 16).  This conclusion is supported by a reasonable reading of the record, including mental status examinations evidencing generally normal findings (T at 677, 696-97, 825).

Dr. Carr assessed mild impairment in Plaintiff's ability to understand, remember, or apply simple directions and instructions and moderate impairment as to understanding, remembering, or applying complex directions. (T at 812).  Dr. Lucy Kim, a consultative psychiatric examiner, described Plaintiff's intellectual functioning as average and opined that Plaintiff had no limitation in understanding, remembering, or applying simple or complex directions and instructions. (T at 649-50).  Dr. E. Kamin, a non-examining State Agency review physician, assessed mild limitation in this domain. (T at 122).  Dr. Efobi, a medical expert who testified at the administrative hearing held on July 16, 2019, opined that Plaintiff had mild limitations with respect to simple directions and marked impairment as to complex tasks. (T at 56-57).

The ALJ assessed moderate limitation in Plaintiff's ability to interact with others. (T at 17). Dr. Kim and Dr. Carr both assessed no limitation in this domain. (T at 650, 812). Dr. Kamin opined that Plaintiff had mild limitation as to social interaction. (T at 122). Dr. Efobi testified that Plaintiff had mild to no impairment in this domain. (T at 57).

The ALJ found moderate impairment in Plaintiff's capacity to concentrate, persist, and maintain pace. (T at 17). Dr. Kim assessed no limitation in this domain. (T at 650). Dr. Carr opined that Plaintiff had mild limitation. (T at 812). Dr. Kamin assessed moderate impairment. (T at 122). Dr. Efobi testified that Plaintiff had mild to no impairment in this domain. (T at 57).

The ALJ determined that Plaintiff had mild limitation in adapting or managing himself. (T at 17). Dr. Carr opined that Plaintiff had no limitation in sustaining an ordinary routine and regular attendance and mild to moderate impairment as to regulating emotions, controlling behavior, and maintaining well-being. (T at 812). Dr. Kim found no limitation. (T at 650). Dr. Kamin assessed mild impairment in this domain. (T at 122). Dr. Efobi testified that Plaintiff had moderate impairment in this domain. (T at 57).

In sum, the ALJ's conclusion that Plaintiff did not have extreme or marked impairment in any of the domains of functioning is supported by a

reasonable reading of the record and appropriate reconciliation of the medical opinion evidence.  The ALJ's Listings analysis must therefore be sustained under the deferential standard of review applicable here. *See Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.")(emphasis in original) (citation and internal quotation marks omitted); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.")(citation omitted).

    *C.   RFC*

    A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).  When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the

final responsibility for deciding these issues is reserved to the Commissioner.").

As discussed above, the ALJ determined that as of April 4, 2018, Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations: he is limited to simple routine repetitive tasks and low stress jobs (defined as those that require only occasional decisional making, occasional changes, and occasional contact with coworkers and the general public); no exposure to extreme cold, heat, wetness, humidity, fumes, odors, dust, gases, pulmonary irritants, or poor ventilation; and no exposure to noise above the moderate level. (T at 19).

Plaintiff argues that the ALJ erred by failing to account for his inability to sustain a schedule and limitation in interacting with supervisors.

The Court concludes that the ALJ adequately addressed Plaintiff's limitations with respect to sustaining a schedule. In reaching his conclusion concerning Plaintiff' ability to sustain a schedule the ALJ relied upon Dr. Kim and Dr. Carr, who assessed no limitation in Plaintiff's ability to sustain an ordinary routine and regular attendance. (T at 650, 812). The ALJ's assessment is also consistent with Dr. Kamin who opined that Plaintiff could perform unskilled work on a sustained basis. (T at 127).

As discussed above, the ALJ limited Plaintiff to simple routine repetitive tasks and low stress jobs. (T at 19).  This aspect of the ALJ's decision is sufficiently supported and should be sustained.  *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014)(finding that ALJ appropriately accounted for moderate work-related psychiatric limitations by limiting the claimant to unskilled, low stress work involving limited contract with others); *see also Sanchez v. Saul*, No. 18CV12102 (PGG) (DF), 2020 WL 2951884, at *27 (S.D.N.Y. Jan. 13, 2020); *Miller v. Berryhill*, No. 6:16-CV-06467(MAT), 2017 WL 4173357, at *6 (W.D.N.Y. Sept. 20, 2017); *Sophie H. v. Saul*, No. 5:18-CV-375 (CFH), 2019 WL 3975455, at *7 (N.D.N.Y. Aug. 22, 2019).

Although the ALJ did not err in his RFC analysis in limiting Plaintiff to simple routine repetitive tasks and low stress jobs, the ALJ committed error by failing to address any limitation Plaintiff may have in interacting with supervisors.  The ALJ found that Plaintiff had a moderate limitation in interacting with others. (T at 17).  The RFC determination incorporates a limitation to no more than occasional contact with coworkers and the general public. (T at 19).  Notably, however, the ALJ did not incorporate (or address) any limitation in Plaintiff's ability to interact with, and accept criticism from, supervisors.

"The public, supervisors, and co-workers are distinct groups, and are separately addressed on the Commissioner's mental residual capacity forms." *Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *5 (W.D.N.Y. Dec. 8, 2020) (citation and alteration omitted); *see also Fuller v. Berryhill*, No. 17-CV-00887-LGF, 2019 WL 421484, at *4 (W.D.N.Y. Feb. 4, 2019) ("[T]he groups of the public, supervisors, and co-workers are distinct for purposes of assessing an applicant's capacity to relate to others....").

Here, the ALJ imposed limitations as to two of these three groups, but provided no discussion in his written opinion explaining why he decided not to incorporate any limitation with respect to Plaintiff's ability to accept workplace supervision. This was error.  *See, e.g., Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *2 (W.D. Pa. Sept. 23, 2014) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the Defendant's mental residual capacity forms. Thus, limitations on two of these types of interactions in the RFC does not account for limitations on the third.")

Moreover, the evidence on which the ALJ relied in assessing Plaintiff's RFC does not appear to support differing conclusions as to the public and co-workers on the one hand and supervisors on the other.

Plaintiff was diagnosed with oppositional defiant disorder on multiple occasions. (T at 672-79, 681-82, 692-98, 821-22, 950-52, 962-64, 973-75, 986-88, 1008-1017).  He had angry outbursts and limited social connections. (T at 48-49, 909-13). Dr. Arthur Jackson, Plaintiff's treating psychiatrist, assessed moderate to marked limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors. (T at 1006). The ALJ found Dr. Jackson's opinion "not fully persuasive," but did conclude it was "somewhat supported by historical treatment records." (T at 23).  The ALJ said he considered Dr. Jackson's findings when assessing Plaintiff's RFC. (T at 23).

In sum, the ALJ credited the evidence of limitation in Plaintiff's ability to interact with others and found it significant enough to preclude him from performing work involving more than occasional contact with coworkers and the general public. (T at 19).  Despite including limitations regarding contact with coworkers and the general public the ALJ apparently concluded that Plaintiff had no limitation in his ability to accept instructions and respond appropriately to criticism from supervisors, as evidenced by the fact that he did not include any limitation in this regard into the RFC or include any limitations regarding interactions with supervisors in the hypothetical presented to the vocational expert. (T at 19, 109).

An ALJ must provide a "roadmap" between the record and the result. The failure to do so deprives the Court of the ability to determine accurately whether the ALJ's decision is supported by substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (noting that "the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence").

The ALJ's failure to address in his written decision whether Plaintiff was limited in his interactions with supervisors is not a mere technicality. Rather "[T]o the extent an ALJ distinguishes between the groups with whom a claimant can interact, [the ALJ] must explain and provide support for that distinction." *Timikia C. v. Comm'r of Soc. Sec.*, No. 21-CV-00568-MJR, 2023 WL 5367796, at *3 (W.D.N.Y. Aug. 22, 2023); *see also Joseph H. v. Comm'r of Soc. Sec.*, No. 3:19-CV-587 (ATB), 2020 WL 2736276, at *8 (N.D.N.Y. May 26, 2020)("[T[he ALJ compounded her error by failing to explain how she determined that plaintiff could tolerably interact with co-workers and supervisors up to one-third of the workday but not the general public, when the medical opinion evidence in the record made no such distinction regarding plaintiff's limitations in interacting with others.").

The problem in this case is there is no roadmap to explain how the ALJ reached the conclusion that Plaintiff was limited to occasional contact

with coworkers and the public, but could have unlimited interaction with supervisors.

Remand is required so the ALJ can address this deficiency and either explain why no supervision limitation is required or incorporate a limitation into the RFC and then consider whether Plaintiff remains capable of performing work that exists in significant numbers in the national economy. See *Michelle A*., 2020 WL 7223235, at *5 ("The ALJ's failure to … either impose a limitation as to plaintiff's ability to interact with supervisors, or to explain, based upon the evidence in the record, why one was not necessary, is an error which requires remand.").

> D.      *Remand*

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above, the Court concludes that a remand is necessary for proper consideration of Plaintiff's ability to interact with supervisors in the workplace.

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) should be GRANTED, and this case should be remanded for further proceedings under sentence four of section 405 (g) of the Social Security Act.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. *See also* Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the District Judge. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP*

*v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d

84, 92 (2d Cir. 2010).


Dated: March 21, 2024                *s / Gary R. Jones*
                                     GARY R. JONES
                                     United States Magistrate Judge